UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 07-359-GWU

BILLY C. CAYWOOD,                                              PLAINTIFF,

VS.                          **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                   DEFENDANT.

**INTRODUCTION**

The plaintiff brought this action to obtain judicial review of an administrative denial of his application for Disability Insurance Benefits (DIB).  The appeal is currently before the court on cross-motions for summary judgment.

**APPLICABLE LAW**

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled.  If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)?  If yes, proceed to Step 3.  If no, the claimant is not disabled.  See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities?  If yes, proceed to Step 4.  If no, the claimant is not disabled.  See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

07-359  Billy C. Caywood

4.      Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5.  If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.920(d), 416.920(d).

5.      Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled.  If no, proceed to Step 6.   <u>See</u>  20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.      Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.  If no, proceed to Step 7.  <u>See</u> 20 C.F.R. 404.1520(e), 416.920(e).

7.      Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.   <u>See</u> 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

2

07-359  Billy C. Caywood

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. <u>Garner</u>, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. <u>Bowie v. Secretary</u>, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. <u>Cf. Houston v. Secretary of Health and Human Services</u>, 736 F.2d 365, 367 (6th Cir. 1984); <u>King v. Heckler</u>, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. <u>Hardaway v. Secretary</u>, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. <u>Jones</u>, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. § 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1)

3

07-359  Billy C. Caywood

whether objective medical evidence confirms the severity of the
alleged pain arising from the condition; or (2) whether the objectively
established medical condition is of such a severity that it can
reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir.
1986).

Another issue concerns the effect of proof that an impairment may be
remedied by treatment.  The Sixth Circuit has held that such an impairment will not
serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health
and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same
result does not follow if the record is devoid of any evidence that the plaintiff would
have regained his residual capacity for work if he had followed his doctor's
instructions to do something or if the instructions were merely recommendations.
Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106,
1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence
before it, despite the plaintiff's claims that he was unable to afford extensive medical
work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592
(6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a
factor to be considered against the plaintiff, Hale v. Secretary of Health and Human
Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way

4

07-359  Billy C. Caywood

to afford or obtain treatment to remedy his condition, <u>McKnight v. Sullivan</u>, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. <u>Studaway v. Secretary</u>, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a <u>prima facie</u> case by proving that he or she is unable to return to work. <u>Cf. Lashley v. Secretary of Health and Human Services</u>, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  <u>Id.</u> at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  <u>E.g.</u>, <u>Faucher v. Secretary of Health and Human Services</u>, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

07-359  Billy C. Caywood

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.

6

07-359  Billy C. Caywood

In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

### DISCUSSION

The plaintiff, Billy C. Caywood, was found by an Administrative Law Judge (ALJ) to have a "severe" combination of impairments consisting of back pain status post lumbar transverse fractures, an adjustment disorder, and a history of a concussion with mild traumatic brain injury.  (Tr. 18).  Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mr. Caywood retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits.  (Tr. 23-6).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether the plaintiff could perform any jobs if he were limited to "light" exertion, and also had the following non-exertional restrictions.  (Tr. 583).  He: (1) could occasionally stoop, crawl, and climb ladders, ropes, and scaffolds; (2) could have no concentrated exposure to vibration; and (3) was able to understand, remember, and carry out

7

07-359  Billy C. Caywood

simple, repetitive tasks and instructions, sustain attention to complete simple tasks for two-hour segments in an eight-hour workday, interact with supervisors and coworkers in a non-public setting, and adapt to a work setting that was not highly pressured.  (Tr. 583-4).  The VE responded that there were jobs that such a person could perform as a commercial cleaner, bench assembler, and laborer/hand packer, and proceeded to give the numbers of such jobs existing in the state and national economies.  (Tr. 584).

On appeal, this court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

Mr. Caywood alleged disability due to pain from a back injury which had occurred in a fall while he was at work in August, 2004.  (Tr. 75-6).  He testified that, in addition to his back injury, which radiated down his right leg and caused pain whenever he stood or walked, that he had hit his head and still had numbness and "little headaches every now and then."  (Tr. 574-8).  He felt his short-term memory had been affected.  (Tr. 578).  He also described poor sleep, but was able to take care of his personal needs and do simple cooking.  (Tr. 579, 581).

Medical records in the transcript confirm that Mr. Caywood was briefly hospitalized in August, 2004 after he fell 30 feet due to being knocked off a beam. (Tr. 143).  Other than a laceration to his scalp, a CT scan of his head showed a right

8

07-359  Billy C. Caywood

frontal lobe hematoma and a CT scan of his spine showed an L4-L5 transverse process fracture.  (Tr. 144-5).  He was discharged from Cabell Huntington Hospital in stable condition after four days with a back brace.  (Tr. 143).

Brief follow-up notes by Dr. David Weinsweig, a neurologist, state that by September 21, 2004 a CT scan of the head showed the brain injury to be resolving, and Mr. Caywood continued to be able to move all of his extremities well.  (Tr. 166).  His main complaint was low back pain with numbness into the right leg, and Dr. Weinsweig suggested an MRI and physical therapy.  (Id.).  The lumbar MRI showed degenerative disc disease at L3-S1 and a small disc protrusion at L5-S1, but no spinal stenosis.  (Tr. 164).  After reviewing the MRIs, the physician recommended physical therapy and a functional capacity evaluation (FCE) in six to eight weeks.  (Tr. 163).  There were no further visits to this source.  The plaintiff began seeing his regular physician, Dr. George Chaney, for regular physical therapy appointments in December, 2004 (Tr. 346) and received monthly ultrasound treatments, although few or no abnormalities were noted on Dr. Chaney's examinations which appeared to be essentially unchanged from visit to visit.  (E.g., Tr. 222-3, 237, 442-502).  Dr. Chaney opined in December, 2005 that his patient was capable of performing light level exertion with certain postural restrictions (Tr. 489-90), but in May, 2006 indicated that he could not perform full-time sitting or standing (Tr. 434-7).

07-359  Billy C. Caywood

The ALJ rejected Dr. Chaney's more recent restrictions because they were not supported by his physical findings, and were inconsistent with the conclusions of other examiners.  The court agrees that the ALJ gave a sufficient rationale to reject the treating physician's opinion under the standards set out in <u>Wilson v. Commissioner of Social Security</u>, 378 F.3d 541 (6th Cir. 2004).  In addition to Dr. Chaney's opinion being poorly supported by objective findings, he appeared to contradict himself on the issue of the plaintiff's restrictions, without documenting any change in his condition.

Other physical examiners included Neurologist Dr. John Gilbert, who examined Mr. Caywood on two occasions in early 2005 and obtained new MRIs of his brain and lumbosacral spine.  (Tr. 169-70).  Dr. Gilbert concluded that the brain MRIs were unremarkable, and while the lumbosacral spine MRI showed degenerative changes and a protrusion at L5-S1, he recommended only two to six weeks of physical therapy and provided no permanent functional restrictions.  (Tr. 168).  Another neurologist, Dr. Naveed Ahmed, evaluated Mr. Caywood in June, 2005, after he had been released by Dr. Gilbert.  (Tr. 523).  Dr. Ahmed did make some positive physical findings such as a limited range of motion of the lumbar spine with tenderness in the lower lumbar region and in the right sacroiliac joint, as well as diminished ankle reflexes.  (Tr. 524).  He had normal motor strength and sensation, however.  (Tr. 525).  Dr. Ahmed thought it would be worthwhile to obtain

10

nerve conduction velocity (NCV) testing of the lower extremities (Tr. 526), but when this study was obtained in July, 2005 the results were essentially normal (Tr. 529-30).  Dr. Ahmed did not list functional restrictions, although he did suggest cutting down on pain medications.  (Tr. 526).

Dr. Bart Goldman, an orthopedic surgeon, treated the plaintiff beginning in February, 2005. (Tr. 504).  He reviewed previous records, and performed a physical examination which showed an antalgic gait and some tenderness to palpation of the lumbar spine, but Mr. Caywood was able to bend forward 90 degrees at the waist and get down into a full squatting position and rise without difficulty.  (Tr. 506-7). There was minimally decreased sensation to light touch over the left foot, which Dr. Goldman felt could not be explained by the results of the MRI.  (Tr. 509).  Mr. Caywood had a grossly normal mental status exam and no complaints of headaches, so Dr. Goldman saw no indication for another MRI of the brain.  (Id.). He assigned a five percent impairment rating due to a fracture of the L4 transverse process, and opined that the plaintiff should be able to return to his regular duty job after an active physical therapy program.  (Id.).  On follow-up after physical therapy in July, 2005, Dr. Goldman noted that Mr. Caywood's range of motion had actually decreased, and he felt that the plaintiff's description of loss of sensation made "neither physiologic nor anatomic sense."  (Tr. 515, 517).  Dr. Goldman did not change the impairment rating, and opined that Mr. Caywood's balance was not

11

07-359  Billy C. Caywood

good enough to go back to his job working on bridges, but felt that there were a wide variety of other jobs he could perform.  (Tr. 517).  Therefore, his conclusions are consistent with the ALJ's hypothetical question.

Finally, Dr. Timothy Kriss, a neurosurgeon, examined the plaintiff in April, 2006 and reviewed extensive records.  (Tr. 551-2).  Although it was clear that the plaintiff did have a concussion at a minimum and a mild traumatic brain injury at worst, he could not discern any residual cognitive or affective dysfunction.  (Tr. 553). He noted that the plaintiff's complaints in this regard had been inconsistent, as well. (Tr. 554).  Although his lumbar range of motion was limited due to pain, Mr. Caywood was capable of bending forward 90 degrees at the waist, and his motor and sensory examinations were normal except for decreased sensation to pinprick in the right leg below the knee.  (Tr. 552).  Dr. Kriss thought that the plaintiff's back pain was the result of a soft tissue injury, and although he was unable to return to his previous job, he could perform lifting of up to 30 pounds with no repetitive bending or twisting.  (Tr. 555).  This is also consistent with the hypothetical question.

The hypothetical factors are also supported by an apparent FCE which produced largely normal findings (Tr. 428) and by a residual functional capacity

07-359  Billy C. Caywood

assessment prepared by the state agency (Tr. 206-14).[1]  Therefore, there is substantial evidence to support the ALJ's physical findings.

The plaintiff asserts that the ALJ did not provide a sufficient rationale for discounting his subjective complaints of pain.  Although it was not extensive, the ALJ gave a sufficient discussion of his reasons for discounting the plaintiff's subjective complaints, including the lack of support for his assertion that he had no feeling in his right leg and an improbable claim that he would only sleep 40 to 50 hours every two weeks. (Tr. 24). This is a sufficient rationale under <u>Duncan</u>, <u>supra</u>.

A psychological examiner, Dr. C. Christopher Allen, examined Mr. Caywood in April, 2005 and assessed average to low average intelligence, with reading comprehension and arithmetic skills within the impaired range and significant deviations in attention and concentration, object naming and perception, acquisition of new information, motor dexterity and complex planning and problem-solving, which he felt were very likely attributable to Mr. Caywood's recent traumatic brain injury.  (Tr. 175).  However, he felt that improvement in functioning was likely over the next six to nine months, although it was also likely he would have some residual neuropsychological deficits.  (Id.).  He also felt that the plaintiff was having some emotional distress, although he did not readily admit it.  Dr. Allen's "diagnostic

---

[1] The last page of the state agency report is not signed, but a cover sheet indicates that it was prepared by Dr. John Rawlings.  (Tr. 206).

13

07-359  Billy C. Caywood

considerations" were a cognitive disorder, an adjustment disorder, "rule out" dementia due to traumatic brain injury, and "rule out" a depressive disorder.  (Tr. 176).

Dr. David Shraberg, a psychiatrist, evaluated the plaintiff in November, 2005, and reviewed Dr. Allen's report.  (Tr. 533, 535).  At that time, Mr. Caywood himself denied memory or concentration problems, although he complained of irritability due to headaches and primarily to back and right leg problems.  (Tr. 535).  He described himself as living alone, although his girlfriend and mother looked in on him, and stated that he could take care of himself, and perform such activities as driving to town and having coffee with friends.  (Tr. 536).  On examination, Dr. Shraberg found Mr. Caywood to have a normal Mini Mental Status Exam and a normal sensory and motor examination, although there was subjective numbness in the right thigh which was non-physiological.  (Tr. 537).  Dr. Shraberg concluded that the plaintiff had essentially recovered from his brain injury, although it was probably the cause of his irritability, and did not think that Mr. Caywood could be defined as having a significant cognitive disorder.  (Id.).  He had no neuropsychiatric restrictions except for a need to avoid heights.  (Tr. 538).[2]

_____

[2]Even assuming for the sake of argument that Dr. Shraberg's restriction on working around heights was binding on the ALJ, Social Security Ruling 85-15 indicates that such a restriction would not have a significant impact on work at all exertional levels. Nor would it appear that the jobs identified by the VE would require exposure to heights. (Tr. 584).

14

07-359  Billy C. Caywood

The ALJ concluded that Dr. Shraberg's recent testing showed that the plaintiff no longer had any "severe" residuals from his head injury, but gave the plaintiff the benefit of the doubt and followed restrictions given by state agency reviewing Psychologist Jan Jacobson in June, 2005.  (Tr. 22, 188-90).  The plaintiff suggests that only Dr. Allen's report should have been accepted, but the ALJ could reasonably have relied on the other one-time examiner, Dr. Shraberg, whose opinion was entitled to at least equal weight.

Finally, the plaintiff's complaint that the ALJ did not consider his pulmonary impairment appears to be in error, since, as the Commissioner notes, there is no allegation of or evidence of a pulmonary condition.

The decision will be affirmed.

This the 13th day of August, 2008.

**Signed By:**

**G. Wix Unthank**

**United States Senior Judge**